Phyllis WHITE, et al., Plaintiffs,

v.

Bill LEMACKS, et al., Defendants.

No. CIV.A.1:98–CV–2063–CAM.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 19, 1998.

---

**39.** Pl.'s Resp. to Defs.' Mot. for Summ. J. at 12.

**40.** *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993) (citations omitted).

Robert Frederick Webb, Webb & D'Orazio, Marietta, GA, Kris Kelly Skaar, Office of Kris Skaar, Marietta, GA, for Plaintiffs.

Donald Ray Foster, Amy C. Nerenberg, G. Robert Williams, II, Foster & Foster, Jonesboro, GA, for Defendants.

## *ORDER*

MOYE, District Judge.

Plaintiffs Phyllis White and William Rostad, acting as administrator for the Estate of Jean Danison, filed this case seeking to recover from Defendants Clayton County, Bill Lemacks, and Stanley Tuggle for injuries White and Danison received while working at the Clayton County Jail. The case is before the Court on Defendants' motion to dismiss and on Plaintiffs' motion to amend the complaint. For the reasons stated herein, both motions are GRANTED.

## BACKGROUND

White and Danison were employed as nurses by Prison Health Services, Inc. (PHS). PHS was under contract to provide medical services to inmates of the Clayton County Jail. White and Danison were working in the infirmary at the Jail on July 23, 1996, when they were attacked and beaten by a prison inmate. While on duty, medical service employees were locked inside the Jail with the inmates; their freedom of movement and ability to flee was limited; and they were required to come into close contact with all inmates. White and Danison had been assured that they would be protected, and Clayton County assigned one Deputy to protect medical service employees while on duty in the prison.

Plaintiffs filed this case against Lemacks and Tuggle in their individual and official capacities and against Clayton County pursuant to 42 U.S.C. § 1983 alleging violations of their due process rights under the Fifth and Fourteenth Amendments. Plaintiffs also included claims for state tort law violations, for

punitive damages, and for attorney's fees and other expenses of litigation.

Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. Defendants also contend they are entitled to qualified immunity, sovereign immunity, and official immunity.

In response, Plaintiffs seek to amend the complaint to drop the § 1983 claims based on Fifth Amendment violations, the state law tort claims, the claims for punitive damages against Clayton County and against Lemacks and Tuggle in their official capacities, and the claims for attorney's fees and other expenses. As to their § 1983 claims based on Fourteenth Amendment violations, Plaintiffs contend the law was clearly established in the Eleventh Circuit that they have substantive due process claims based on both the special relationship and the special danger doctrines.

## LEGAL STANDARDS AND ANALYSIS

### I. *Amendment of Complaint*

■■] After the time for amending as a matter of course has expired, "a party may amend the party's pleading only by leave of court; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "While the district court is accorded discretion in arriving at its decision, a justifying reason must be apparent for denial of a motion to amend." *Nolin v. Douglas County*, 903 F.2d 1546, 1550 (11th Cir.1990).

Plaintiffs' proposed amendment to the complaint dismisses some claims and clarifies others. Finding no reason to deny the amendment, the Court grants Plaintiffs' motion. The only claims remaining are Plaintiffs' § 1983 claims based on alleged violations of their substantive due process rights under the Fourteenth Amendment.

### II. *Motion to Dismiss Section 1983 Claim*

"In appraising the sufficiency of the complaint ... the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In evaluating a motion to dismiss, the court must accept as true the factual allegations of the plaintiff's complaint. *South Florida Water Management Dist., v. Montalvo*, 84 F.3d 402, 406 (11th Cir.1996).

■■] "[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). *See, also, Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (The first step in considering any claim under § 1983 is "to identify the specific constitutional right allegedly infringed."). If the defendant in a § 1983 action is a governmental entity, the initial inquiry must focus on: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [governmental entity] is responsible for that violation." *Collins v. Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

■■] "[S]ection 1983 imposes liability only for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Wideman v. Shallowford Community Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir.1987) (internal quotation marks omitted). "It does not provide a remedy for any and all injuries inflicted by persons acting under color of state law." *Id.* (internal quotation marks omitted). "Absent the existence of an underlying constitutional right, no section 1983 claim will lie." *Id.*

■■] Defendants contend Plaintiffs had no constitutional right to protection from harm by third parties and that Plaintiffs had no special relationship with Clayton County that imposed a duty to protect. They contend Plaintiffs voluntarily chose to work at the Jail and could have left the Jail any time they wanted. They contend there is no constitutional right to a safe work environment

and that they took no affirmative action to increase the risk of harm to Plaintiffs.

Plaintiffs contend Clayton County and Lemacks and Tuggle violated their substantive due process rights by failing to protect them from harm while they were working at the Clayton County Jail. They contend they had a special relationship with Clayton County because they had been hired to work at the Jail and because their jobs required that they be secured in the Jail and have close contact with all inmates. They further contend neither the Supreme Court nor the Eleventh Circuit has limited the special relationship doctrine to incarcerated persons. Plaintiffs also contend they are entitled to recover pursuant to the special danger doctrine in that Defendants affirmatively placed them in a position of danger.

"[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cty. Soc. Servs. Dept.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). "[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression." *Id.* at 196, 109 S.Ct. 998. "Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. 998.

"[I]n certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198, 109 S.Ct. 998. For example, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199–200, 109 S.Ct. 998. Thus, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive

limits on state action set by the ... Due Process Clause." *Id.* at 200, 109 S.Ct. 998. "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.*

The courts have recognized a "special relationship" with regards to persons who are incarcerated, who have been involuntarily committed to mental institutions, who have been arrested, and who have involuntarily been placed in foster care. *Wideman,* 826 F.2d at 1034, 1035 n. 6. However, "[t]he contours of what constitutes a 'special relationship' between a [local government], acting through its officials, and its citizens are hazy and indistinct." *Id.* at 1035 (internal quotation marks omitted). The "primary thread weaving ... special relationship cases together is the notion that if the state takes a person into custody or otherwise assumes responsibility for that person's welfare, a special relationship may be created in respect of that person." *Id.* (internal quotation marks omitted). "Stated more broadly, the rationale for imposing these special relationships lies in constraints the state imposes on private action." *Id.* (internal quotation marks omitted). "Following this rationale, a constitutional duty can arise only when a state or [local government], by exercising a significant degree of custody or control over an individual, places that person in a worse situation than he would have been had the government not acted at all." *Id.* "Such a situation could arise by virtue of the state affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." *Id.* "The key concept is the exercise of coercion, dominion, or restraint by the state." *Id.* at 1035–36. "The state must somehow significantly limit an individual's freedom or impair his ability to act on his own before it will be constitutionally required to care and provide for that person." *Id.* at 1036. The key

inquiry is whether the state controlled the injured party's life to such an extent that he could not reasonably be expected to protect himself. *Wooten v. Campbell*, 49 F.3d 696, 701 (11th Cir.1995). *See also, D.W. v. Rogers*, 113 F.3d 1214, 1217 (11th Cir.1997) ([W]hen a person is institutionalized—and wholly dependent on the State—a duty to provide certain services and care does exist.) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 317, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)). "If a person's attendance in an area is voluntary, and she was not physically placed there by the state, she cannot be considered to be in custody and subject to the [special relationship] exception." *Hamilton v. Cannon*, 80 F.3d 1525, 1531 n. 5 (11th Cir.1996).

In contending that they have a special relationship with Defendants, Plaintiffs rely on *Cornelius v. Town of Highland Lake, Ala.*, 880 F.2d 348 (11th Cir.1989). That case addressed the town's liability to Mrs. Cornelius, who was employed as Town Clerk by the Town of Highland Lake and worked in the town hall. *Id.* at 350. "Two prison inmates, while assigned to a community work squad in Highland Lake, abducted Mrs. Cornelius from the town hall and terrorized her for three days." *Id.* at 349. Mrs. Cornelius brought suit pursuant to § 1983 "alleging that the defendants violated her constitutionally protected liberty interests." *Id.* The district court granted summary judgment in favor of the defendants after finding that no special relationship existed between Mrs. Cornelius and the defendants. *Id.* On appeal the Eleventh Circuit began by explaining the reasoning to be used in analyzing whether a constitutionally protected right is implicated in a § 1983 action: (1) because "the existence of a special relationship between an individual and the state may trigger a constitutional duty on the state's part to provide protective services," "[w]hen the duty which arises by virtue of the special relationship is coupled with some degree of culpable conduct on the defendant's part, § 1983 liability attaches," *id.* at 352–53; and (2) "[i]n addition to the special relationship approach, a plaintiff may also show a duty on the state's part under § 1983 by establishing that the plaintiff, as opposed to the general public, faced a special danger" created by the state, *id.* at 354. In *Cornelius*, the court found

that "the defendants did indeed create the dangerous situation of the inmates' presence in the community by establishing the work squad and assigning the inmates to work around the town hall" and that "the defendants increased Mrs. Cornelius's vulnerability to harm by regularly exposing her to the work squad inmates by virtue of her position as Town Clerk." *Id.* at 356. The court found that the defendants "facilitated the kidnapping by providing [the abductors] with knives, saws and machetes and by allowing them to roam freely around the town hall." *Id.* at 358. The court further found that "the defendants were aware of the danger present from the community work squad inmates yet did nothing to alleviate or protect against the danger." *Id.* The court found "sufficient evidence that could form a basis for a finding that the defendants were aware that Mrs. Cornelius faced a special danger from the work squad inmates, and that they affirmatively placed her in that dangerous situation." *Id.* at 359. The court therefore held that "the plaintiff has presented sufficient evidence of a duty owing to her by the defendants under § 1983 implicating a right protected by the due process clause of the fourteenth amendment." *Id.*

Although the Eleventh Circuit has not overruled the *Cornelius* decision, it has repeatedly voiced doubts as to the continuing validity of *Cornelius* following the Supreme Court's *Collins* decision, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). *See, e.g., Wyke v. Polk County School Bd.*, 129 F.3d 560, 567 n. 13 (11th Cir.1997) ("Several panels of this Court have questioned the vitality of *Cornelius's* holding after the Supreme Court's decision in *Collins*."); *Mitchell v. Duval County School Bd.*, 107 F.3d 837, 839 n. 3 (11th Cir.1997) ("*Cornelius* may not have survived *Collins* ... where the Supreme Court held that a voluntary employment relationship does not impose a constitutional duty on government employers to provide a reasonably safe work environment."); *Hamilton v. Cannon*, 80 F.3d 1525, 1531 n. 6 (11th Cir.1996) ("*Cornelius'* viability is questionable in light of the Supreme Court's subsequent decision in *Collins* ... which held, in effect, that no special relationship for substantive due process purposes arises from an

employment relationship with the government."); *Lovins v. Lee,* 53 F.3d 1208, 1211 (11th Cir.1995) ("[T]here is considerable doubt about whether [the *Cornelius* ] decision survives the Supreme Court's subsequent *Collins* decision."); *Wooten v. Campbell,* 49 F.3d 696, 700 n. 4 (11th Cir.1995) ("There is some question whether this court's holding in *Cornelius* survived the Supreme Court's decision in *Collins* ... which held that a voluntary employment relationship, standing alone, does not impose a constitutional duty on government employers to provide a reasonably safe work environment."); *Wright v. Lovin,* 32 F.3d 538, 541 n. 1 (11th Cir.1994) ("We note that there is some doubt whether our holding in *Cornelius* has survived the Supreme Court's recent holding in *Collins* ... that a voluntary employment relationship, standing alone, does not impose a constitutional duty on governmental employers to provide a reasonably safe work environment."). The Eleventh Circuit has not specifically considered whether *Cornelius* remains good law in light of *Collins* because it has not needed to do so to resolve the issues before it.

In *Collins,* suit was filed against the city by the widow of a sanitation department employee who "died of asphyxia after entering a manhole to unstop a sewer line." *Collins,* 503 U.S. at 117, 112 S.Ct. 1061. The complaint alleged that Collins had "a constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and a constitutional right to be protected from the City of Harker Heights' custom and policy of deliberate indifference toward the safety of its employees." *Id.* The plaintiff alleged "that the city deprived [Collins] of life and liberty by failing to provide a reasonably safe work environment." *Id.* at 125–26. Her claim advanced two theories: "that the Federal Constitution imposes a duty on the city to provide its employees with minimal levels of safety and security in the workplace, or that the city's 'deliberate indifference' to Collins' safety was arbitrary government action that must 'shock the conscience' of federal judges." *Id.* The Court found that "[n]either the text nor the history of the Due Process Clause support[ed] petitioner's claim that the governmental employer's duty to provide its employees with a safe working

environment [was] a substantive component of the Due Process Clause." *Id.* Noting that it had held that "the Due Process Clause ... requires that conditions of confinement satisfy certain minimal standards for pretrial detainees, for persons in mental institutions, for convicted felons, and for persons under arrest," the Court added that "[t]he 'process' that the Constitution guarantees in connection with any deprivation of liberty thus includes a continuing obligation to satisfy certain minimal custodial standards." *Id.* at 127–28, 112 S.Ct. 1061. Because the city did not "deprive[ ] Collins of his liberty when it made, and he voluntarily accepted, an offer of employment," the Court found no special relationship. *Id.* at 128.

Further, the Court "was not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that could properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* The Court found that plaintiff's claim was "analogous to a fairly typical state-law tort claim: The city breached its duty of care ... by failing to provide a safe work environment." *Id.* "Because the Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," the Court has consistently "rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law." *Id.* (citations omitted). The Court also refused "to characterize the city's alleged omission ... as arbitrary in a constitutional sense" because the Court presumed "that the administration of government programs [was] based on a rational decisionmaking process that [took] account of competing social, political, and economic forces." *Id.* "Decisions concerning the allocation of resources to individual programs ... and to particular aspects of those programs ... involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country." *Id.* at 128–29, 112 S.Ct. 1061. "The Due Process Clause 'is not a guarantee

against incorrect or ill-advised personnel decisions.' " *Id.* at 129, 112 S.Ct. 1061 (citations omitted). "Nor does it guarantee [local government] employees a workplace that is free of unreasonable risks of harm." *Id.* "[T]he Due Process Clause does not impose an independent federal obligation upon [local governments] to provide certain minimal levels of safety and security in the workplace and the city's alleged failure to train or to warn its sanitation department employees was not arbitrary in a constitutional sense." *Id.* at 130, 112 S.Ct. 1061.

The Eleventh Circuit has not addressed the issues presented in this case: (1) whether a "special relationship" exists between a local government and a person employed to work in its jail and (2) whether merely working in the jail is a "special danger" created by the local government. At least three circuits have addressed the issues and have answered both in the negative. *See, Wallace v. Adkins,* 115 F.3d 427, 429–430 (7th Cir.1997) (when a prison guard was attacked by an inmate who had previously threatened to kill the guard, the court found no liability because the due process clause does not guarantee public employees a workplace free of unreasonable risks of harm and prison guards are free to walk out the door any time they want); *Uhlrig v. Harder,* 64 F.3d 567, 570 (10th Cir.1995) (when a music and activity therapist working at the state hospital was murdered by a patient who was placed in the hospital after being found not guilty by reason of insanity on the charge of aggravated battery, the court found no special relationship because the injured party was simply an employee of the state working at the hospital, and "an employment relationship is consensual in nature"); *L.W. v. Grubbs,* 974 F.2d 119, 120, (9th Cir.1992) (when a nurse employed at a medium security custodial institution for young male offenders was raped and terrorized by an inmate, the court found no special relationship, but held that the plaintiff had stated a claim under the special danger doctrine because her supervisors had taken affirmative action "to place her at significant risk" by assigning a known "violent sex offender who had failed all treatment and was likely to assault a woman if alone with her" to work alone with her in the clinic).

In the case at bar, Plaintiffs allege that they worked in the Clayton County Jail; that while in the Jail, they were attacked and beaten by an inmate who was being held on aggravated assault charges; and that the Deputy on duty to protect them was subdued by the inmate. They do not allege that their employment was anything but voluntary. They do not allege any facts showing that the Defendants took any affirmative action to increase the risk over the dangers inherent in working in a jail.

In light of the Supreme Court decision in *Collins,* this Court finds that Plaintiffs have failed to allege a special relationship that would impose liability under the substantive component of the Due Process Clause. Further, and regardless of whether *Collins* has effectively overruled *Cornelius,* the Court finds that Plaintiffs have failed to allege any facts showing any affirmative action or culpable conduct by the Defendants sufficient to create liability under the special danger doctrine. Plaintiffs have, therefore, failed to state a substantive due process claim against the Defendants.

## CONCLUSION

The Court GRANTS Plaintiffs' motion to amend the complaint [7–1]. The Court GRANTS Defendants' motion to dismiss for failure to state a claim upon which relief can be granted [3–1].

CLERK of COURT is directed to enter judgment in favor of Defendants. This closes the case.